United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JFUN AR I, LLC, and others,<br><br>　　　　　Plaintiffs,<br><br>　　　v.<br><br>GURDEEP BILLAN, and others,<br><br>　　　　　Defendants. | Case No. 26-cv-01119-NC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS WITH LEAVE TO AMEND**<br><br>Re: ECF 30, 31 |

Plaintiffs JFUN and Silo Technologies petition this Court to compel Defendants husband and wife Gurdeep and Ranjodh Billan and their trust, the Raipur Dabba Revocable Trust (the Family Trust), to arbitration. The arbitration involves Melon Corp., which is wholly owned by the Family Trust, and its' contracts with Plaintiffs. Defendants have moved to dismiss the complaint for lack of jurisdiction and failure to state a claim. ECF 30, 31. Because this Court has personal jurisdiction over the Billans and the Texas proceeding has no effect on this lawsuit, the Court GRANTS in part and DENIES in part Defendants' Motions to Dismiss the complaint and GRANTS Plaintiffs leave to amend.

## I.　BACKGROUND

### A.　Factual Background

The complaint alleges as follows. Silo Technologies provides agricultural businesses with logistical support, including through the Instant Pay and Cash Advance

United States District Court
Northern District of California

Programs.  Compl., ECF 1, ¶¶ 12, 13.  Through these programs, Silo purchased agricultural companies' invoices and accounts receivable to free up capital and provided revenue-based financing.  *Id.* ¶ 13.  Melon Corp. grows and sells produce and participated in Silo's programs.  *Id.* ¶ 14.  The Billans created, control, and are co-trustees of the Family Trust which holds the entirety of Melon's stock and has complete control and ownership of the company.  *Id.* ¶ 1(c).  The Billans serve as Melon's agents, directors, and founders.  *Id.* ¶ 1(a).

In 2022, Gurdeep, as Melon's president, executed the agreements to participate in Silo's programs.  *Id.* ¶¶ 15, 27.  Melon's participation in the Cash Advance Program was based on Gurdeep's inflated representations to Silo that he expected over twelve million dollars in revenue from a watermelon harvest.  *Id.* ¶¶ 28–29.  Gurdeep also stated that he would use strawberry harvest proceeds to remit the amounts owed by Melon to the Cash Advance Program.  *Id.* ¶ 30.  Silo relied upon these representations when allowing Melon to participate in the Cash Advance Program.  *Id.* ¶ 31.

In 2024, the Billans transferred their primary residence in Arizona, worth approximately one million four hundred thousand dollars to the Family Trust at a time when Melon owed Silo millions of dollars.  *Id.* ¶ 39.  The Billans did not receive reasonably equivalent value in exchange for the transfer of the property to the Trust.  *Id.* ¶ 40.  Around this time, Gurdeep sent Silo text messages with photographs of successful watermelon growth.  *Id.* ¶ 41.  Gurdeep also stated in a virtual meeting that he expected to sell his produce to major retailers which would result in revenue of over two million dollars per week for the following three weeks.  *Id.* ¶ 42.  However, Gurdeep diverted funds for his personal use to purchase seven new cars.  *Id.* ¶ 43.

Shortly thereafter, Melon breached the agreements with Silo.  *Id.* ¶¶ 44–45.  Silo entered a bill of sale and assignment with JFUN assigning it Silo's rights to the Instant Pay Receivables.  *Id.* ¶ 47.

In August 2024, Melon sued Silo asserting a claim under the Perishable Agricultural Commodities Act.  *Id.* ¶ 60; *see Melon Corp. v. Silo Techs., Inc.*, 5:24-cv-

4781 (N.D. Cal. Aug. 6, 2024). The court ordered the parties to arbitration, but instead of pursuing its claims in arbitration, Melon voluntarily dismissed the case. *Id.* ¶¶ 61, 63. JFUN and Silo initiated an arbitration against Melon for breach of contract, misrepresentation, and fraudulent conveyances, but the Billans and the Family Trust have refused to participate in arbitration. *Id.* ¶ 64. The arbitrator held that whether the Billans and the Family Trust may be compelled to arbitrate must be decided by a court of law. *Id.* ¶ 65.

### B. Procedural Background

On February 5, 2026, Plaintiffs filed the complaint in this action. ECF 1. Defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) and (b)(6). ECF 30, 31. Plaintiffs opposed. ECF 37, 38. Defendants replied. ECF 46, 47. The parties have consented to magistrate judge jurisdiction. ECF 48.

## II. LEGAL STANDARD

### A. Rule 12(b)(2)

In a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff, as the party seeking to invoke the jurisdiction of the federal court, has the burden of establishing that jurisdiction exists. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). When the motion to dismiss constitutes a defendant's initial response to the complaint, a plaintiff need only make a prima facie showing that personal jurisdiction exists. *See Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). While a plaintiff cannot "'simply rest on the bare allegations of its complaint,' uncontroverted allegations in the complaint must be taken as true [and] [c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger*, 374 F.3d at 800 (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977), and citing *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996)).

### B. Rule 12(b)(6)

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal

United States District Court
Northern District of California

sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When reviewing a 12(b)(6) motion, a court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." *Retail Prop. Trust v. United Bd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). A court, however, need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If a court grants a motion to dismiss, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## III.   PLAINTIFFS CANNOT ASSERT A CLAIM AGAINST THE FAMILY TRUST

Federal courts sitting in diversity apply the substantive law of the forum state. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Under California law, a trust is a "fiduciary relationship with respect to property." *Ziegler v. Nickel*, 64 Cal. App. 4th 545, 548 (1998). "As a general rule, the trustee is the real party in interest with standing to sue and defend on the trust's behalf." *In re Estate of Bowles*, 169 Cal. App. 4th 684, 691 (2008). So, a trust itself cannot sue or be sued; rather, any lawsuit involving trust property must be brought against the trustee in his representative capacity. *See Presta v. Tepper*, 179 Cal. App. 4th 909, 914 (2009).

Plaintiffs cannot maintain a claim against the Family Trust, but may do so against the Billans in their capacities as trustees. Accordingly, the Court grants Defendants' motion to dismiss the Family Trust from the action, but grants Plaintiffs leave to amend the claim as against the Billans in their capacities as trustees.

4

## IV.   THE BILLANS ARE SUBJECT TO THIS COURT'S JURISDICTION

Defendants contend the Court lacks specific subject matter jurisdiction over the Billans because they both reside in Arizona and, though Melon transacted with Silo, a California corporation, the Billans themselves have not conducted business in California. ECF 31 at 7–8, 10–11.  Defendants also argue Melon's California contacts cannot be attributed to the Billans because the fiduciary shield doctrine applies.  *Id.* at 11, 13.

Plaintiffs maintain that this Court does have specific jurisdiction over Defendants because they are subject to the underpinning arbitration agreement which contains a forum selection clause.  ECF 37-1 at 8–9.  Alternatively, Plaintiffs argue Defendants' conduct as Melon's corporate officers in dealing with a California corporation subjects them to jurisdiction.  *Id.* at 9–11.

The Court will analyze each argument below.

### A.   Defendants are Subject to this Court's Jurisdiction Based on the Forum Selection Clause

Plaintiffs contend Defendants are subject to the forum selection clause in the Advance Agreement signed by Gurdeep in his capacity as Melon's president.  ECF 37-1 at 8–9.  Defendants argue the forum selection clause does not bind non-signatories.  ECF 46 at 8–9.

The Cash Advance Agreement contains the following forum-selection clause:

> This Agreement and all matters relating to the relationship of the parties created hereby is governed by the laws of the State of California . . . Seller and Silo hereby consent to the jurisdiction and exclusive venue of the state courts in the City and County of San Francisco, California or federal court for the Northern District of California as this Agreement was entered into and made to performed in the San Francisco County, California . . . .

ECF 1-1 at 10.

As an initial matter, the Court must evaluate whether the forum selection clause applies to this dispute by interpreting and determining its scope.  *See Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988) (explaining that the enforcement of a forum selection clause "necessarily entails interpretation of the clause before it can be

enforced"). The clause states that the "Agreement and *all matters relating to the relationship of the parties* created hereby is governed by the laws of the State of California." ECF 1-1 at 10 (emphasis added). Plaintiffs allege that Defendants breached the Cash Advance Agreement, so Plaintiffs' claim will depend upon interpreting the Agreement's terms. Further, neither party disputes the forum selection clause's validity, and the Court does not see any basis to find it unreasonable or unfair to enforce its terms. So, the Court finds Plaintiffs' claim is covered by the Agreement.

A forum selection clause may be enforced against a non-party in at least two circumstances: (1) when the non-party is a third-party beneficiary of the contract with the clause, *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1180 (9th Cir. 2014), and (2) when the non-party and the conduct at issue are "closely related" to the parties to the contract with the forum selection clause, *Manetti-Farrow, Inc.*, 858 F.2d at 514 n.5. The Ninth Circuit has recognized that accepting a forum selection clause evidences consent to personal jurisdiction in that forum. *See SEC v. Ross*, 504 F.3d 1130, 1149 (9th Cir. 2007).

Gurdeep's conduct is so closely related to the contractual relationship between Melon and Plaintiffs that it makes sense to bind him to the forum-selection clause. A forum-selection clause in an agreement extends to "a range of transaction participants, parties and non-parties." *Manetti–Farrow, Inc.*, 858 F.2d at 514 n. 5. Courts regularly "apply a forum-selection clause to a corporate officer or related company that was not part of the agreement to which it applies in his or her individual capacity . . . provided the claims in the suit related to the contractual relationship." *Ultratech, Inc. v. Ensure NanoTech (Beijing), Inc.*, 108 F. Supp. 3d 816, 822 (N.D. Cal. 2015) (collecting cases). Gurdeep signed the Advance Agreement for Melon Corp. Compl. Exhs. A, B. Plaintiffs allege Gurdeep overstated Melon's expected revenue, told Plaintiffs he would use proceeds from a strawberry harvest to remit amounts owed to the Cash Advance Program, sent photos of alleged crop growth, and diverted funds for his personal use. *Id.* ¶¶ 28, 29, 30, 41, 42, 43. Then, Gurdeep allegedly breached both agreements and transferred assets from Melon to the Family Trust to shield them from Plaintiffs. *Id.* ¶¶ 44, 45, 58. Especially

6

here, "where the claims against the officer in his individual capacity relate to the contractual relationship, at least where the officer is a signatory and where the officer is accused of subverting the very agreement he signed," the forum selection clause confers jurisdiction on Gurdeep. *Ultratech, Inc.*, 108 F. Supp. 3d at 823; *see also Prods. & Ventures Int'l v. Axus Stationary (Shanghai) Ltd.*, No. 16-cv-00669-YGR, 2017 WL 201703, at *7 (N.D. Cal. Jan. 18, 2017) (enforcing forum-selection clause against corporate officer who negotiated the agreement and signed it on behalf of the corporation and owned significant interests in the corporation). Gurdeep's conduct directly relates to Melon's breach and its contractual relationship with Plaintiffs. So, he is subject to this Court's jurisdiction by virtue of the forum-selection clause.

As for Ranjodh, the Court finds she is bound to the forum selection clause as a third-party beneficiary to the agreement. Under the third-party beneficiary test, a non-signatory party who "knowingly exploits the benefits of [an] agreement and receives benefits flowing directly from the agreement" may be required to abide by the forum selection clause. *Nguyen*, 763 F.3d at 1180. The complaint's allegations satisfy this test—Ranjodh purportedly serves as Melon's "agent, director, and founder" so was aware of the Agreement and she possesses assets purchased with funds diverted from repayment to Silo. Compl. ¶¶ 1(a), 57. Ranjodh's declaration states that she "does not have day-to-day management duties" over Melon, but does not explain what duties she *does* have to Melon or her role in the company. [1] As such, Ranjodh's declaration does not contradict Plaintiffs' allegations, which must be taken as true at the motion to dismiss stage. ECF 31-2 at 2–3; *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 27 F. Supp. 3d 1002, 1008 (N.D. Cal. 2014) (citing *Data Disc, Inc.*, 557 F.2d at 1284) (courts "may not assume the truth of allegations that are contradicted by affidavit"). Ranjodh has purportedly enjoyed benefits that derive from the Agreement, so she should be required to

---

[1] In considering a motion to dismiss for lack of personal jurisdiction, courts may consider evidence presented in affidavits and declarations in determining personal jurisdiction. *Data Disc, Inc.*, 557 F.2d at 1285.

United States District Court
Northern District of California

arbitrate claims which fall under that Agreement.  Accordingly, the Court finds it has jurisdiction over both the Billans in accordance with the forum-selection clause.

**B.      Even Absent the Forum-Selection Clause, the Court has Specific Personal Jurisdiction**

The parties do not dispute that the Billans, Arizona residents, are not subject to general jurisdiction in California.  A court may exercise specific personal jurisdiction over a nonresident defendant if (1) the nonresident defendant purposefully directs his activities at the forum or performs some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the plaintiff's claim arises out of the forum-related activities of the nonresident defendant; and (3) the exercise of jurisdiction over the nonresident defendant is reasonable. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

***i.      Purposeful Direction***

To determine whether a defendant's acts have had the requisite effects, courts assess whether the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Levi Strauss & Co. v. J. Barbour & Sons Ltd.*, No. 3:18-cv-03540-WHO, 2019 WL 1117533, at *4 (N.D. Cal. Mar. 11, 2019).  As the Ninth Circuit has explained, "purposeful availment is satisfied even by a defendant whose only 'contact' with the forum state is the 'purposeful direction' of a foreign act having effect in the forum state." *Schwarzenegger*, 374 F.3d at 803 (internal quotation and citation omitted).

An officer's alleged participation in tortious conduct can create individualized liability:

> If acts taken by a corporate officer subjects the officer to personal liability (i.e., the corporate officer authorized, directed or participated in tortious conduct), and those acts create contact with the forum state, such acts are not only acts of the corporation but also acts of the individual, and may be considered contacts of the individual for purposes of determining whether long-arm jurisdiction may be exercised over the individual.

United States District Court
Northern District of California

*In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*, 497 F. Supp. 3d 552, 675 (N.D. Cal. 2020) (quoting *Chunghwa Telecom Glob., Inc. v. Medcom, LLC*, No. 5:13-cv-02104-HRL, 2016 WL 5815831, at *6 (N.D. Cal. Oct. 5, 2016)) (citation omitted). Plaintiffs allege the Billans acted to cause harm and prevent repayment by making false representations regarding projected sales and diverting funds for personal use. Compl. ¶¶ 39–43. These allegations assert intentional misrepresentations and breach of contract that directly caused harm to Plaintiffs in California. *See* Compl. ¶¶ 39–43 (alleging that Defendants are individually acting to thwart a California corporation's recovery). As such, Defendants' alleged individual tortious conduct creates contacts with California, rendering them subject to jurisdiction by this Court.

Nor can Defendants successfully assert the fiduciary shield doctrine here. "The fiduciary shield doctrine protects individuals from being subject to jurisdiction solely on the basis of their employers' minimum contacts within a given jurisdiction." *Chunghwa Telecom Glob., Inc.*, 2016 WL 5815831, at *6 (quoting *j2 Global Commc'ns, Inc. v. Blue Jay, Inc.*, No. 4:08-cv-04254-PJH, 2009 WL 29905, at *5 (N.D. Cal., Jan. 5, 2009)). The doctrine does not apply when the employee was instrumental in the wrongful conduct that intended to cause harm in the foreign state. *In re JUUL Labs, Inc.*, 497 F. Supp. 3d at 676 n. 91 (citing *Calder v. Jones*, 465 U.S. 783, 790 (1984)) (finding jurisdiction over non-resident defendants where they were "primary participants in an alleged wrongdoing intentionally directed at a California resident"). Here, the complaint alleges that the Billans were the "primary participants" in diverting Melon's funds so Plaintiffs could not be repaid. So, this factor is satisfied.

### ii. Claim Arises out of Forum-Related Activities

Claims "arise out of" forum-related contacts when those contacts are the "but for" cause of a plaintiff's claims. Thus, courts ask whether the plaintiff would have been injured "but for" the conduct directed at the forum state. *See Levi Strauss*, 2019 WL 1117533, at *6 (citing *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998)). Plaintiffs' claim stems from Defendants' purposeful relationship with a California

9

corporation, so this factor is met.

### iii.   Exercise of Jurisdiction is Reasonable

In determining reasonableness, the court considers (1) the extent of the defendants' purposeful interjection into the forum state, (2) the burden on the defendants of defending in the forum state, (3) the extent of the conflict with the sovereignty of the defendants' state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77 (1985).

Because Plaintiffs satisfy their burden as to the first two elements of specific jurisdiction, the burden shifts to Defendants to present a "compelling case" establishing that the exercise of jurisdiction over them is unreasonable. *Bancroft & Masters, Inc. v. August Nat'l, Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000). Defendants have not done so. The first factor favors Plaintiffs since the purposeful availment prong was satisfied. The second factor also favors Plaintiffs because Defendants do not identify why litigating in California would impose a "severe burden" and the Court can think of none. *See* ECF 31 at 11. The third factor is neutral because the parties have not identified a conflict between California and Arizona. California has a strong interest in providing redress for its residents from unlawful conduct, so the fourth factor weighs in Plaintiffs' favor. The fifth and sixth factors also favor Plaintiffs because there is already an arbitration pending in California. Finally, there may be an alternative viable forum in Arizona.

As most of the factors favor Plaintiffs, Defendants have not met their burden to demonstrate the exercise of jurisdiction is unreasonable. Accordingly, Defendants' motion to dismiss for lack of jurisdiction is denied.

## V.   THIS COURT MAY DETERMINE WHETHER TO COMPEL DEFENDANTS TO ARBITRATION

Defendants argue that Plaintiffs cannot seek to have this Court overturn the arbitrator's final ruling, which held that Defendants never agreed to arbitrate with

United States District Court
Northern District of California

Plaintiffs. ECF 30 at 4. Plaintiffs contend the arbitrator's ruling was not final as it only dismissed Defendants without prejudice. ECF 38-1 at 6–7.

The arbitrator held:

> The Northern District of California court did not compel the Billans and the Trust to arbitrate and there is no dispute that they did not execute a contract with Claimants that included a provision requiring the arbitration of disputes. As such, they have not consented to the jurisdiction of this arbitrator to decide whether they may nevertheless be compelled to arbitrate. That decision must be made by a court of law. The objections of the Billans and the Trust to arbitrability and jurisdiction are therefore sustained unless and until a court of law decides they are subject to an arbitration provision with Claimants. They are therefore ordered dismissed from this proceeding without prejudice[.]

ECF 17, Exhibit C, at 4–5.

The Court agrees with Plaintiffs that the arbitrator's finding was not final, and this Court can independently examine whether Defendants can be compelled to arbitration. To be considered a "final" award which a party may seek to vacate, "an arbitration award must be intended by the arbitrator to be a complete determination of every issue submitted." *Millmen Local 550, United Brotherhood of Carpenters and Joiners of America, AFL–CIO v. Wells Exterior Trim*, 828 F.2d 1373, 1375 (9th Cir. 1987). Defendants cannot credibly argue that the arbitrator's preliminary finding on a purely jurisdictional question constitutes a "complete determination" of every issue submitted when it does not consider the merits of Plaintiffs' claims or dismiss Defendants with prejudice. *See Orion Pictures Corp. v. Writers Guild of America, West, Inc.*, 946 F.2d 722, 724–25 (9th Cir. 1991) (an arbitral award is not "final and binding" for the purposes of review if the arbitrator determines only a preliminary issue). In fact, the FAA provides that a party may seek an order to compel arbitration from a district court where another party fails, neglects, or refuses to arbitrate. 9 U.S.C. §§ 1, 4. Plaintiffs ask this Court to do just that, as directly instructed by the arbitrator, and "decide[] [if the Billans] are subject to an arbitration provision with Claimants." ECF 17 at 4–5. Accordingly, the Court denies Defendants' motion to dismiss.

## VI.    THE TEXAS ACTION DOES NOT IMPACT THIS LITIGATION

Defendants contend that a court-ordered stay in a currently pending action in Texas asserted against Melon, to which Plaintiffs are not parties, should also apply here.  ECF 30 at 8.  Plaintiffs argue the Texas court's limited stay only applies to claims brought against Melon involving unpaid produce suppliers, not creditors like Plaintiffs.  ECF 38-1 at 8.

The Court is not persuaded that this case should be dismissed or stayed based on the Texas action.  The Texas court's order (1) stays claims concerning "the personal liability of [the Billans] for any alleged dissipation, mismanagement, improper administration of the PACA Trust Assets, . . . ," and (2) bars "Silo Tech from pursuing or filing any claim against any of Melon Corp.'s Produce buyers (e.g., Costco, Smart & Final, Walmart, etc.)."  ECF 30 at 8–9.  This language prohibits claims explicitly regarding PACA Trust Assets and against Melon's buyers— not those concerning the Family Trust assets or asserted against the Billans by creditors such as Plaintiffs.

Nor is the Court convinced that Plaintiffs' claims here duplicate those in Texas to warrant their dismissal. The Texas case was initiated by Fordel Marketing LLC, not Plaintiffs.  Indeed, as Defendants concede, the Texas court denied Plaintiffs' motion to intervene. ECF 30 at 8.  Thus, the Court denies Defendants' motion to dismiss on this basis.

## VII.    CONCLUSION

Accordingly, the Court orders as follows:

- Defendants' Motion to Dismiss for lack of subject matter jurisdiction is denied;
- Defendants' Motion to Dismiss for failure to state a claim is granted as to the Family Trust, which is dismissed with prejudice;
- Plaintiffs are granted leave to amend the complaint to name the Billans in their capacities as trustees of the Family Trust; and
- Defendants' Motion to Dismiss for failure to state a claim is denied as to the arbitral award and Texas stay.

12

By June 17, 2026, Plaintiffs may amend the complaint or file notice that they do not seek to amend. Plaintiffs may not add additional parties or claims without leave of the Court. Defendants need not answer the complaint while waiting for Plaintiffs' June 17, 2026, response. Rather, Defendants must answer or respond within twenty-one days after Plaintiffs' June 17, 2026, filing.

**IT IS SO ORDERED.**

Dated: May 29, 2026

_____

NATHANAEL M. COUSINS
United States Magistrate Judge

United States District Court
Northern District of California

13